1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

4       **UNITED STATES DISTRICT COURT**

Nov 01, 2018

5       **EASTERN DISTRICT OF WASHINGTON** SEAN F. McAVOY, CLERK

6   AMY B.,

|  |  |
|---|---|
| AMY B.,              Plaintiff,  vs.  COMMISSIONER OF SOCIAL SECURITY,              Defendant. | No. 2:17-cv-00325-MKD  REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  ECF Nos. 13, 14 |

12          BEFORE THE COURT on report and recommendation are the parties'

13  cross-motions for summary judgment.  ECF Nos. 13, 14.  The Court, having

14  reviewed the administrative record and the parties' briefing, is fully informed.  For

15  the reasons discussed below, **IT IS RECOMMENDED** Plaintiff's Motion, ECF

16  No. 13, be granted and Defendant's Motion, ECF No. 14, be denied.

17                          **JURISDICTION**

18          The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g),

19  1383(c)(3).

20                        **STANDARD OF REVIEW**

REPORT AND RECOMMENDATION - 1

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

REPORT AND RECOMMENDATION - 2

decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

REPORT AND RECOMMENDATION - 3

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

REPORT AND RECOMMENDATION - 4

404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

REPORT AND RECOMMENDATION - 5

1    The claimant bears the burden of proof at steps one through four above.  *Tackett v.*

2    *Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five,

3    the burden shifts to the Commissioner to establish that (1) the claimant is capable

4    of performing other work; and (2) such work "exists in significant numbers in the

5    national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*,

6    700 F.3d 386, 389 (9th Cir. 2012).

7                                **ALJ'S FINDINGS**

8              Plaintiff applied for disability insurance benefits and social security income

9    benefits on April 4, 2014, alleging disability beginning April 1, 2009.  Tr. 283-95.

10   Benefits were denied initially, Tr. 196-202, and upon reconsideration.  Tr. 204-08.

11   Plaintiff appeared for a hearing before an administrative law judge (ALJ) on April

12   20, 2016.  Tr. 45-89.  On May 16, 2016, the ALJ denied Plaintiff's claims.  Tr. 17-

13   44.

14             At the outset, the ALJ held that the prior ALJ's decision dated November 29,

15   2012, based on a prior application for benefits, was res judicata as to Plaintiff's

16   non-disability as of that date.[1]  Tr. 20.  At step one, the ALJ found Plaintiff had not

17   _____

18   [1] Plaintiff appealed the prior ALJ's decision to the United States District Court, but

19   was unsuccessful.  Tr. 181-95; *Braesch v. Colvin*, No. 2:14-cv-00068-JTR, 2015

20   WL 128035 (E.D. Wash. Jan. 8, 2015).

REPORT AND RECOMMENDATION - 6

engaged in substantial gainful activity since November 30, 2012, the day after the prior ALJ decision of non-disability. Tr. 23. At step two, the ALJ found Plaintiff has the following severe impairments: connective tissue disease, fibromyalgia, obesity, migraines, asthma, left shoulder mild degenerative joint disease, intermittent skin inflammation, left hip trochanteric bursitis, and major depressive disorder (moderate). Tr. 23. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 24. The ALJ then concluded that Plaintiff has the RFC to perform sedentary work with the following additional limitations:

> [Plaintiff] can lift 10 pounds at a time occasionally and she can lift or carry less than 10 pound [sic] at a time frequently; can sit for six hours and stand and walk for two hours total in an eight-hour workday with normal breaks; can occasionally stoop, crouch, kneel, and crawl; can occasionally climb stairs and ramps but never climb ladders, ropes, or scaffolds; avoid concentrated exposure to pulmonary irritants; no overhead reaching with the left upper extremity. [Plaintiff] can understand, remember, and carry out simple routine and repetitive work instructions; can have casual contact with the public, but no counter or cashier type work; can work with co-workers, but not in a teamwork type work setting; and can handle normal supervision, but no over the shoulder or confrontational type supervision.

Tr. 28.

At step four, the ALJ found Plaintiff was unable to perform her past relevant work as a fast food worker, caregiver, and telemarketer. Tr. 35. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that

REPORT AND RECOMMENDATION - 7

the Plaintiff can perform such as document preparer, stuffer, and lamp-shade assembler.  Tr. 36.  The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from November 30, 2012 through the date of the decision.  Tr. 37.

On August 7, 2017, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 18.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly evaluated the medical opinion evidence; and

2. Whether the ALJ properly weighed Plaintiff's symptom claims.

*See* ECF No. 13 at 10.

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly weighed the medical opinions of treating physician Debra Gore, M.D and counselor, Margaret Stearns, LICSW. ECF No. 13 at 5-9.

REPORT AND RECOMMENDATION - 8

1    There are three types of physicians: "(1) those who treat the claimant

2  (treating physicians); (2) those who examine but do not treat the claimant

3  (examining physicians); and (3) those who neither examine nor treat the claimant

4  but who review the claimant's file (nonexamining or reviewing physicians)."

5  *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

6  "Generally, a treating physician's opinion carries more weight than an examining

7  physician's, and an examining physician's opinion carries more weight than a

8  reviewing physician's." *Id.* "In addition, the regulations give more weight to

9  opinions that are explained than to those that are not, and to the opinions of

10 specialists concerning matters relating to their specialty over that of

11 nonspecialists." *Id.* (citations omitted).

12    If a treating or examining physician's opinion is uncontradicted, an ALJ may

13 reject it only by offering "clear and convincing reasons that are supported by

14 substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

15 "However, the ALJ need not accept the opinion of any physician, including a

16 treating physician, if that opinion is brief, conclusory and inadequately supported

17 by clinical findings." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th

18 Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

19 examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

20 may only reject it by providing specific and legitimate reasons that are supported

REPORT AND RECOMMENDATION - 9

1  by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-

2  31).

3      *1. Debra Gore, M.D.*

4      Plaintiff contends the ALJ improperly rejected the May 2011 and January

5  2016 opinions of Plaintiff's treating physician Debra Gore, M.D.  ECF No. 13 at

6  12-15.

7          a. May 2011 opinion

8      In May 2011, Dr. Gore prepared a Workfirst Documentation Request form

9  for the Washington Department of Social and Health Services opining Plaintiff was

10  unable to work due to daily migraines, depression, and medications that "are not

11  working."  Tr. 880.  Dr. Gore also estimated Plaintiff's condition would last four to

12  six months and eventually Plaintiff "should be able to work part time."  Tr. 880.

13  The ALJ gave this opinion little weight.  Tr. 33.  Dr. Gore's 2011 opinion was

14  contradicted testifying medical experts Reuben Beezy, M.D. and Donna Veraldi,

15  Ph.D., Tr. 51-62, and reviewing physicians, James Bailey, Ph.D., Guillermo Rubio,

16  M.D., and Bruce Eather, Ph.D., Tr. 121-32, 135-46, 148-63, 165-80.  Accordingly,

17  the ALJ was required to provide specific and legitimate reasons for discounting Dr.

18  Gore's 2011 opinion.  *Bayliss*, 427 F.3d at 1216.

19      First, the ALJ found that Dr. Gore's May 2011 opinion was less probative

20  because it accounts for Plaintiff's limitations more than one year before the prior

REPORT AND RECOMMENDATION - 10

ALJ's decision and predates the adjudicatory period commencing November 30, 2012 for the current applications. Tr. 33. The ALJ must consider all medical opinion evidence. *Tommasetti*, 533 F.3d at 1041 (9th Cir. 2008); *Williams v. Astrue,* 493 F. App'x 866, 868 (9th Cir. 2012) (holding that the ALJ erred in failing to consider medical opinions that predated the alleged disability onset date by several years, but concluding that the error was harmless). However, "opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1165 (9th Cir. 2008); *see also Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989) (holding that a medical report that predated the period at issue was only relevant to proving that claimant's condition had worsened since the denial of previous application for benefits). Here, the prior ALJ's decision adjudicated Plaintiff as not disabled through November 29, 2012, and Dr. Gore indicated her opinion of Plaintiff's condition was only expected to apply for four to six months. Given Dr. Gore's statement and the prior ALJ's determination of non-disability, the date of Dr. Gore's opinion was a specific and legitimate reason to assign little weight to the opinion.

Second, the ALJ found that Dr. Gore's 2011 opinion was based upon an assessment of Plaintiff's daily migraines and significant symptoms of depression, the severity of which was not supported by the record under review. Tr. 33. Relevant factors to evaluating any medical opinion include the amount of relevant

1  evidence that supports the opinion, the quality of the explanation provided in the

2  opinion, and the consistency of the medical opinion with the record as a whole.

3  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495

4  F.3d 625, 631 (9th Cir. 2007).  An ALJ may choose to give more weight to an

5  opinion that is more consistent with the evidence in the record.  20 C.F.R. §

6  416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the

7  more weight we will give to that opinion").  Here, the ALJ specifically found that

8  the evidence from the relevant period shows that Plaintiff's migraines were

9  managed and improved with medication.  Tr. 32-33 (citing Tr. 565-72 (2014

10  treatment notes of John Wurst, M.D. noting improvement with medication); Tr.

11  713 (July 2014: treatment note adjusting medication dose noting improvement,

12  "but not to a sufficient degree"); Tr. 847 (Sept. 2014: treatment note indicating re-

13  starting medication "has worked well"); Tr. 1203 (Mar. 2016: treatment note

14  indicating higher dose of medication has been "very effective" with "no other side

15  effects" other than making her feel a little tired) ).  The ALJ also expressly

16  considered the counseling record regarding Plaintiff's symptoms of depression in

17  formulating the RFC with social and concentration, persistence and pace

18  limitations.  Tr. 33.

19       Plaintiff interprets the record differently.  ECF No. 13 at 13.  However, to

20  the extent the evidence could be interpreted differently, it is the role of the ALJ to

REPORT AND RECOMMENDATION - 12

1   resolve conflicts and ambiguity in the evidence.  *See Morgan*, 169 F.3d at 599-600.

2   Where evidence is subject to more than one rational interpretation, the ALJ's

3   conclusion will be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

4   This was a specific and legitimate reason to discredit Dr. Gore's May 2011

5   opinion.

6                    b. January 2016 Opinion

7          On January 27, 2016, Dr. Gore completed a form related to specialized

8   transportation services indicating Plaintiff was unable to utilize the public transit

9   system, but was able to use paratransit door-to-door service.  Tr. 966.  Dr. Gore

10  checked boxes indicating that Plaintiff was "unable to walk ¾ mile (ADA

11  Guidelines) or stand for 10 minutes due to a physical impairment" and an

12  unspecified "other medical condition."  *Id*.  Dr. Gore expected this condition would

13  be "lifelong."  *Id*.  Dr. Gore was asked to provide the requested explanation for her

14  selections on the form as to why Plaintiff could not use public transportation.  Tr.

15  968.  Dr. Gore completed the form a second time, explaining the "other" medical

16  conditions were "anxiety and agoraphobia."  Tr. 969.  The ALJ accorded this

17  opinion little weight.

18         To the extent Dr. Gore's January 2016 opinion suggests Plaintiff is unable to

19  work due to her physical and mental impairments, Dr. Gore's opinion was

20  contradicted by the credited opinions of Drs. Beezy, Veraldi, Bailey, Rubio, and

REPORT AND RECOMMENDATION - 13

Eather.  Tr. 51-62, 121-32, 135-46, 148-63, 165-80.  Accordingly, the ALJ was

required to provide specific and legitimate reasons for discounting Dr. Gore's

opinion.  *Bayliss*, 427 F.3d at 1216.

The ALJ discounted Dr. Gore's 2016 opinion because it was inadequately

explained.  Tr. 33.  The Social Security regulations "give more weight to opinions

that are explained than to those that are not."  *Holohan*, 246 F.3d at 1202.  "[T]he

ALJ need not accept the opinion of any physician, including a treating physician, if

that opinion is brief, conclusory and inadequately supported by clinical findings."

*Bray*, 554 at 1228.  The ALJ found that Dr. Gore did not provide any explanation

for the walking and standing limitations, which was a requirement of the form,

despite having been specifically asked to provide the explanation.  Tr. 33 (citing

Tr. 969).  Moreover, the ALJ found that Plaintiff's counseling records did not

indicate a severe impairment of anxiety and the "extreme limitations" in Plaintiff's

ability to stand were "not consistent with substantial evidence of record."  Tr. 34.

Plaintiff contends the ALJ failed to consider "hundreds of pages of clinical notes,"

some of which are discussed in the Reply and do not relate at all to Dr. Gore's

2016 opinion.  ECF No. 13 at 15, ECF No. 15 at 6.  Plaintiff has failed to

demonstrate the ALJ erred.  The lack of adequate explanation and support for Dr.

Gore's 2016 opinion was a specific and legitimate reason for assigning little

weight to the opinion.

REPORT AND RECOMMENDATION - 14

1  *2. Margaret Stearns, LICSW*

2  In October 2011, January 2013, November 2013, and September 2014, Ms.

3  Stearns completed forms for the State of Washington Department of Social and

4  Health Services.  Tr. 886-88 (Oct. 2011); Tr. 889-91 (Jan. 2013); 892-94 (Nov.

5  2013); 895-97 (Sept. 2014).  Ms. Stearns opined that because of mental health

6  symptoms associated with depression, Plaintiff would be unable to work.  *Id.*  The

7  ALJ assigned this opinion little weight.  Tr. 34-35.

8  Ms. Stearns, as a treating mental health counselor, is considered an "other

9  source" of information and not an "acceptable medical source."  20 C.F.R. §§

10  404.1513(d), 416.913(d) (amended March 27, 2017).  Opinions of "other sources,"

11  are not entitled to the same deference.  *Molina*, 674 F.3d at 1111.  The ALJ may

12  discount opinions from "other sources" if the ALJ gives "germane reasons" for

13  doing so.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

14  First, the ALJ explained that like Dr. Gore's 2011 opinion discussed *supra*,

15  Ms. Stearns' 2011 assessment was rendered prior to the period being adjudicated

16  commencing November 30, 2012.  Tr. 34.  Indeed, the opinion was considered by

17  the previous ALJ, who rejected it.  Tr. 107 (ascribing little weight to the "extreme"

18  limitations in the opinion which were contrary to Plaintiff's treating physician's

19  opinion at the time and rendered for TANF welfare assistance benefits).  Although

20  records of Plaintiff's mental health status in 2011 might have informed the ALJ's

1  assessment as to the relevant period, given Ms. Stearns' subsequent opinions

2  rendered in 2013 and 2014, the medical opinion predating the current period under

3  review was of limited relevance.  *Carmickle*, 533 F.3d at 1165.  The date of Ms.

4  Stearns' 2011 opinion was a germane reason to discount that opinion.

5          As to Ms. Stearns' three opinions from 2013 and 2014, Tr. 889-97, the

6  ALJ's decision fails to address them when it states: "[n]onetheless, the undersigned

7  has considered the treatment notes from Ms. Stearns and considered the evidence

8  in these notes showing stressor and problems with anger would result in the social

9  and concentration, persistence, and pace limitations as described in the above

10  [RFC]."  Tr. 34.  The mere reference to Ms. Stearns' treatment notes, does not

11  constitute a germane reason for discounting the 2013 and 2014 opinions.

12  Accordingly, the Court finds the ALJ erred in assigning little weight to the 2013

13  and 2014 opinions of Ms. Stearns.

14          Defendant does not contest the conclusion the ALJ erred in his consideration

15  of the evidence, but argues the rejection of Ms. Stearns' opinions is harmless error

16  because the ALJ credited the conflicting opinion of the "more reliable" testifying

17  psychological expert, Donna Veraldi, Ph.D.  ECF No. 14 at 6-7.  Harmless error

18  occurs when an error is inconsequential to the ultimate nondisability determination.

19  *See Carmickle*, 533 F.3d at 1162.  Ms. Stearns is an other medical source; the

20  regulations prohibit discounting Ms. Stearns' opinions merely because she is not

REPORT AND RECOMMENDATION - 16

1    an "acceptable medical source."  *Hayes v. Berryhill*, 721 F. App'x 648, 651 (9th

2    Cir. 2018) (finding the ALJ erred in discounting vocational counselor's lay opinion

3    because he is not an "acceptable medical source").  While it may be generally true

4    that licensed doctors are considered more reliable sources of medical assessment,

5    the weight to which medical opinion evidence from "other sources" may be

6    entitled will vary according to the particular facts of the case.  SSR 06-03p, 2006

7    WL 2329939 (Aug. 9, 2006).  The fact Dr. Veraldi had no contact with the Plaintiff

8    and Ms. Stearns had been treating Plaintiff since at least 2011, Tr. 690, are

9    observations which weigh on the relative reliability of the opinions.  The ALJ did

10   not specifically address, or resolve, this conflict, and did not reject or include Ms.

11   Stearns' opinions in the final RFC determination.  Accordingly, the error cannot be

12   considered harmless.

13   **B. Plaintiff's Symptom Claims**

14        Plaintiff faults the ALJ for discrediting Plaintiff's symptom testimony.  ECF

15   No. 13 at 11-12.

16        An ALJ engages in a two-step analysis when evaluating a claimant's

17   subjective symptoms.  20 C.F.R. §§ 404.1529(a), 416.929(a); Social Security

18   Ruling (SSR) 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine

19   whether there is objective medical evidence of an underlying impairment which

20   could reasonably be expected to produce the pain or other symptoms alleged."

REPORT AND RECOMMENDATION - 17

1  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not

2  required to show that her impairment could reasonably be expected to cause the

3  severity of the symptom she has alleged; she need only show that it could

4  reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572

5  F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

6         Second, "[i]f the claimant meets the first test and there is no evidence of

7  malingering, the ALJ can only reject the claimant's testimony about the severity of

8  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

9  rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

10 citations and quotations omitted).  "General findings are insufficient; rather, the

11 ALJ must identify what testimony is not credible and what evidence undermines

12 the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

13 Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

14 must make a credibility determination with findings sufficiently specific to permit

15 the court to conclude that the ALJ did not arbitrarily discredit claimant's

16 testimony.")).  "The clear and convincing [evidence] standard is the most

17 demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995,

18 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

19 924 (9th Cir. 2002).

20

REPORT AND RECOMMENDATION - 18

Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c) (1)–(3), 416.929 (c) (1)–(3).  The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  *Id*. at *2.

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms, but Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  Tr. 29.

The ALJ summarizes the medical evidence and assigns weight to the medical opinions, without providing any specific explanation of the adverse

REPORT AND RECOMMENDATION - 19

determination in regards to Plaintiff's symptoms claims.  The discussion of the

medical evidence identifies a number of inconsistencies.  Tr. 29-33.  Contradiction

with the medical record is a sufficient basis for rejecting the claimant's subjective

testimony.  *Carmickle*, 533 F.3d at 1161; *Johnson v. Shalala*, 60 F.3d 1428, 1434

(9th Cir. 1995).  However, as noted by Plaintiff, an ALJ may not discredit a

claimant's symptom testimony and deny benefits solely because the degree of the

symptoms alleged is not supported by objective medical evidence.  *Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341,

346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601.  The medical evidence is a relevant

factor in determining the severity of a claimant's pain and its disabling effects.

*Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  Minimal

objective evidence is a factor which may be relied upon in discrediting a claimant's

testimony, although it may not be the only factor.  *See Burch*, 400 F.3d at 680.

First, the ALJ acknowledged the record reflects Plaintiff experiences pain

related to her physical impairments, but noted numerous medical treatment records

where Plaintiff was observed to have normal, stable or minimal findings.  Tr. 29-

32.  For example, though exam notes reflected the presence of soft tissue tender

points of fibromyalgia, multiple notes from 2013 and 2014 repeatedly reflected no

swelling, tenderness, increased heat, or redness of upper and lower extremity

joints.  Tr. 29-30 (citing Tr. 410, 412, 521, 531, 574-75, 579, 710, 841).  In regards

REPORT AND RECOMMENDATION - 20

1  to Plaintiff's hip pain, the ALJ summarized the treatment record which he noted

2  reflected tenderness without popping or grating.  Tr. 30 (citing 500).  In late

3  November 2012, an orthopedic evaluation noted x-rays did not reveal any

4  significant arthritis and Plaintiff received an injection.  Tr. 30, 502-03, 808 (normal

5  x-rays of left hip); *see also* Tr. 426 (noting hip x-rays in 2011 were normal).  At

6  her follow-up orthopedic evaluation, Plaintiff reported the injection had helped

7  "quite a bit" and she had no pain with range of motion.  Tr. 30 (citing Tr. 511).  In

8  addition, although Plaintiff alleged hip pain contributed to difficulty walking and

9  standing, the ALJ noted that a February 28, 2014 examination showed Plaintiff had

10  a normal gait.  Tr. 30 (citing Tr. 574-75); *see also* Tr. 847 (Sept. 2014 treatment

11  note); Tr. 848 (May 2015 treatment note); Tr. 869 (Dec. 2016 treatment note).

12         Next, the ALJ noted the record of Plaintiff's left shoulder pain evidenced

13  Plaintiff's pain was not due to an injury, Tr. 30 (citing Tr. 511), and there were

14  minimal objective findings related to the shoulder.  Tr. 31.  Plaintiff's MRI of the

15  shoulder was negative.  Tr. 517.  The ALJ considered the orthopedic physical

16  examination findings related to the shoulder in 2013 and 2015.  Tr. 31.  In 2015,

17  Plaintiff's provider recommended "conservative therapy," in the form of a

18  corticosteroid injection, physical therapy, ice and heat therapy, and home

19  exercises.  Tr. 867.  The Court notes that days following the injection, treatment

20  notes indicate the shoulder was "doing well" and Plaintiff's chief complaint was

REPORT AND RECOMMENDATION - 21

1    her back and hip instead of her shoulder.  Tr. 1247; *see also* Tr. 1249 (March 2015:

2    "doing well with her shoulder").

3          Regarding Plaintiff's recurrent rashes, the ALJ noted that treatment records

4    did not record any physical limitations associated with the rashes, which were less

5    frequent with treatment.  Tr. 32.

6          In addition, the ALJ also noted multiple examples of reported headache

7    control.  Tr. 32 (citing Tr. 565-72 (2014 treatment notes of John Wurst, M.D.

8    noting improvement with medication); Tr. 713 (July 2014: treatment note adjusting

9    medication dose noting improvement, "but not to a sufficient degree"); Tr. 847

10    (Sept. 2014: treatment note indicating re-starting medication "has worked well");

11    Tr. 1203 (Mar. 2016: treatment note indicating higher dose of medication has been

12    "very effective" with "no other side effects" other than making her feel a little

13    tired).

14          Finally, in regards to Plaintiff's alleged disabling mental health symptoms,

15    including alleged severe anxiety since 2012, the ALJ noted this allegation was

16    inconsistent with the lack of reported symptoms of anxiety in the mental health

17    treatment record.  Tr. 32.  The ALJ also noted evidence suggesting that multiple

18    stressors aggravate Plaintiff's symptoms of depression.  Tr. 32 (noting the stressors

19    experienced by Plaintiff included "housing or homelessness, finances, single

20    parenting, denial of disability benefits, and an abusive relationship…" and citing

REPORT AND RECOMMENDATION - 22

Tr. 629-90, 720-55, 817-36, 913-37).  If a claimant suffers from limitations that are transient and result from situational stressors, as opposed to resulting from a medical impairment, an ALJ may properly consider this fact in discounting Plaintiff's symptom claims.  *See Chesler v. Colvin*, 649 F. App'x. 631, 632 (9th Cir. 2016) (symptom testimony properly rejected in part because "the record support[ed] the ALJ's conclusion that [plaintiff's] mental health symptoms were situational"); *but see Bryant v. Astrue*, No. C12-5040-RSM-JPD, 2012 WL 5293018, at *5–7 (W.D. Wash. Sept. 24, 2012) (concluding Plaintiff's stressors appeared to have a constant presence affecting ability to work on a continuing basis, rather than temporary exacerbation).  Here, the ALJ's mere reference to the evidence of situational stressors, standing alone, is not a sufficiently "clear and convincing" to uphold the ALJ's overall finding regarding Plaintiff's symptom claims.

Plaintiff contends the ALJ "did no more than imply that the objective evidence does not support [Plaintiff's] claims."  ECF No. 13 at 11.  The Court agrees.  Though the ALJ's decision suggests there were other "reasons explained in this decision," the ALJ must make findings that are sufficiently specific to permit meaningful judicial review.  *Ghanim*, 763 F.3d at 1163; *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).  Here, the Court is unable to reasonably discern

REPORT AND RECOMMENDATION - 23

clear and convincing reasons for discounting Plaintiff's symptom claims from the ALJ's recitation of the medical evidence.

Based on the foregoing, the ALJ failed to cite specific, clear and convincing reasons supported by substantial evidence, to reject Plaintiff's symptom claims. On remand, the ALJ should reweigh Plaintiff's symptoms claims.

**C. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 15 at 9-10.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). The Court may not award benefits under the credit-as-true rule unless the record has been fully developed, further administrative proceedings would serve no useful purpose, and there is no "serious doubt" that the Plaintiff is, in fact disabled. *Revels v. Berryhill*, 874 F.3d 648, 668

(9th Cir. 2017); *Garrison*, 759 F.3d at 1021.  As these requirements are not satisfied, the Court recommends a remand for further administrative proceedings to allow the ALJ to consider the opinion evidence and reweigh Plaintiff's symptom claims.  Although Ms. Stearns opined Plaintiff was unable to work due to depression, Plaintiff testified that she has had depression since she was a teenager and she was able to work while experiencing depression.  Tr. 75-76.  The ALJ made no finding as to whether Plaintiff's situational stressors were transient in nature or present on a continuing basis in Plaintiff's life.  Moreover, Ms. Stearns' opinion that Plaintiff's symptoms of depression severely limit her ability to work, look for work, or prepare for work, conflicts with that of the medical expert, which conflict must be resolved by the ALJ in the first instance.  Because further administrative proceedings would be useful to address the conflicts in the medical record and Plaintiff's symptom claims, the Court recommends the remand of this case for further proceedings consistent with this Report and Recommendation.

On remand, the ALJ shall: (i) offer the Plaintiff the opportunity for a further administrative hearing; (ii) reweigh the medical opinions, in particular, the 2013 and 2014 opinions of Ms. Stearns; (iii) reweigh Plaintiff's symptom claims; and (iv) revisit the five-step inquiry, starting with step three.

1

## CONCLUSION

2      Having reviewed the record and the ALJ's findings, this Court concludes the

3  ALJ's decision is not supported by substantial evidence and free of harmful legal

4  error.  Accordingly, **IT IS HEREBY RECOMMENDED**:

5      1. Plaintiff's Motion for Summary Judgment, ECF No.13, be **GRANTED**.

6      2. Defendant's Motion for Summary Judgment, ECF No. 14, be **DENIED**.

7      3. The Court enter JUDGMENT in favor of Plaintiff REVERSING and

8  REMANDING the matter to the Commissioner of Social Security for further

9  proceedings consistent with this recommendation pursuant to sentence four of 42

10  U.S.C. § 405(g).

11

## OBJECTIONS

12      Any party may object to a magistrate judge's proposed findings,

13  recommendations or report within **fourteen (14)** days following service with a

14  copy thereof.  Such party shall file written objections with the Clerk of the Court

15  and serve objections on all parties, specifically identifying the portions to which

16  objection is being made, and the basis therefor.  Any response to the objection

17  shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is

18

19

20

REPORT AND RECOMMENDATION - 26

directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject or modify the magistrate judge's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon. The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMJR 2, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to enter this Report and Recommendation, forward a copy to counsel, and **SET A CASE MANAGEMENT DEADLINE ACCORDINGLY.**

DATED November 1, 2018.

<u>s/Mary K. Dimke</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION - 27